IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILLIE BAKER

    Petitioner,

v.                                          CASE NO. 4:06cv514-RH/AK

WALTER McNEIL,

    Respondent.

_____/

**ORDER GRANTING A WRIT OF HABEAS CORPUS**

By petition for a writ of habeas corpus under 28 U.S.C. § 2254, Willie Baker challenges his Florida state-court conviction for committing a sexual act with a 15-year-old girl. The trial court denied Mr. Baker's federal constitutional right to effectively cross-examine the girl by showing that she had falsely accused others of having sex with her, as she admitted during a contemporaneous proffer. The state appellate court ruled the error harmless. It was not. This order grants the petition.

I

The evidence against Mr. Baker came from two sources: the complaining witness's testimony and Mr. Baker's taped interview with law enforcement

officers. In the taped interview, Mr. Baker said he tried to have sex with the complaining witness but "nothing happened," apparently because he could not achieve or maintain an erection. Trial Tr. 50. Mr. Baker proposed to show on cross-examination of the complaining witness, and through extrinsic evidence, that she had repeatedly and falsely accused others of having sex with her. During a proffered cross-examination outside the jury's presence, the complaining witness admitted it. *Id.* at 30-33. But the trial court sustained the state's objections. In asserting that the testimony was admissible, Mr. Baker cited only state law; he did not invoke the Sixth Amendment's Confrontation Clause.

On appeal, Mr. Baker challenged the limitation on cross-examination and the exclusion of the extrinsic evidence under state law and, for the first time, under the Confrontation Clause. The appellate court affirmed the conviction without reaching the merits of the claims. *Baker v. State*, 804 So. 2d 564 (Fla. 1st DCA 2002). The court said that Mr. Baker unequivocally admitted his guilt in the taped interview and that any error thus was harmless. *Id.* at 567. The court did *not* say Mr. Baker had defaulted the constitutional claim.

The complaining witness later recanted her testimony. Mr. Baker sought relief on this basis in state court. After an evidentiary hearing, the trial court did not credit the recantation. The court denied relief. Mr. Baker appealed, and the appellate court affirmed without opinion. *Baker v. State*, 939 So. 2d 1062 (Fla. 1st

DCA 2006) (table).

Mr. Baker's federal petition seeks relief on two grounds. He asserts that the exclusion of the evidence of the complaining witness's prior false accusations violated the Confrontation Clause. And he asserts that the denial of a new trial based on the recantation also was unconstitutional. The state has admitted proper exhaustion of the claims and has not asserted procedural default. This order grants the petition on the first ground and does not reach the second.

II

This case is governed by the Antiterrorism and Effective Death Penalty Act. The Act requires a federal habeas petitioner who is challenging a state-court conviction to exhaust state remedies. The Act allows a federal court to grant relief on a claim that the state court rejected on the merits only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A long and ever-growing line of decisions elaborates on these standards. *See, e.g.*, *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000); *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318 (11th Cir. 2002). No purpose would be served by plowing this ground again in this order.

III

In excluding the proffered evidence of prior false accusations, the trial court did not address the Confrontation Clause, because the issue was not raised. The appellate court did not address the issue on the merits because it found any error harmless. As set out below, the harmless-error conclusion was based on an unreasonable determination of the facts in light of the evidence and was an unreasonable application of the Supreme Court's harmless-error decisions. The proper standard of review in this court on the merits of the Confrontation Clause claim is de novo; no deference is due the state courts on this issue.

The Supreme Court has made clear that the Confrontation Clause encompasses a defendant's right to cross-examine prosecution witnesses at least in some respects. *See, e.g.*, *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) (invalidating a conviction because the defendant was precluded from cross-examining a witness on the fact that he was on probation and thus had a motive to give testimony favorable to the prosecution). A violation of the right does not automatically entitle the defendant to reversal of the conviction; a violation is, instead, subject to harmless-error review. *See Delaware v. Van Arsdall*, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (holding that precluding the defendant from cross-examining a witness about his agreement with the prosecutor violated the Confrontation Clause but remanding for a harmless-

error analysis); *see also Michigan v. Lucas*, 500 U.S. 145, 152, 111 S. Ct. 1743, 114 L. Ed. 2d 205 (1991) (holding that when a defendant violates a requirement to give pretrial notice of a factual contention that the defendant otherwise would be entitled to explore on cross-examination, the Confrontation Clause does not necessarily allow the defendant to proceed with the cross-examination: "The Sixth Amendment is not so rigid.").

The best reasoned decision on facts similar to those at issue here is *White v. Coplan*, 399 F.3d 18 (1st Cir. 2005) (Boudin, C.J.). A jury convicted the defendant of sexual assaults on two young girls after the court excluded evidence that they had falsely accused others of sexual assaults. The First Circuit held that excluding the evidence violated the Confrontation Clause. Indeed, the court held that the state courts' contrary conclusion was an unreasonable application of federal law as determined by the United States Supreme Court, thus warranting relief even under the deferential standards of § 2254(d)(1).

In reaching this conclusion, the First Circuit acknowledged that "general" credibility evidence—including evidence of prior, unrelated dishonesty—is often inadmissible, but it noted that the proffered evidence went well beyond that:

> The evidence in this case was considerably more powerful. The past accusations were about sexual assaults, not lies on other subjects; and while sexual assaults may have some generic similarity, here the past accusations by the girls bore a close resemblance to the girls' present testimony—in one case markedly so. In this regard the

> evidence of prior allegations is unusual.
>
> If the prior accusations were false, it suggests a pattern and a pattern suggests an underlying motive (although without pinpointing its precise character). The strength of impeachment evidence falls along a continuum. That a defendant told lies to his teacher in grade school is at one end; that the witness was bribed for his court testimony is at another. Many jurors would regard a set of similar past charges by the girls, if shown to be false, as very potent proof in White's favor.

*Id.* at 24. The court added: "If the witness were prepared to admit on the stand that a prior accusation of similar nature was false, it is hard to imagine good reason for excluding the evidence." *Id.* at 25.

The same reasoning is fully applicable here. It is hard to imagine a good reason for excluding the complaining witness's admission that she had made prior, similar false accusations against others. Indeed, the proposed cross-examination went to the heart of the witness's credibility. She had falsely accused men of having sex with her, and she was prepared to admit it. She must have had a reason for the false accusations—perhaps that she was mad at the men, or at all men, or perhaps a different reason known only to herself. Whatever the reason, Mr. Baker's theory of the case was that the reason was at work again. The Confrontation Clause has been held to afford a right to cross-examine a complaining witness on this basis even when there has been only a single prior false allegation of sexual abuse. *See Redmond v. Kingston*, 240 F.3d 590, 591-92

(7th Cir. 2001) (Posner, J.).

Mr. Baker's attorney proposed to inquire about this on cross-examination. But in order "to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis*, 415 U.S. at 318.

A rational fact finder, genuinely searching for the truth in this case, would most assuredly want to know that the complaining witness had falsely accused others of sexual abuse that did not occur. What a rational fact finder would want to know is not the test that governs the Confrontation Clause, but is surely a factor in the analysis. Denying the right to cross-examine this witness on this basis violated the Confrontation Clause.

In reaching this conclusion, I have not overlooked circuit decisions involving different circumstances, such as an unproven allegation that a prior accusation was false. *See, e.g.*, *Quinn v. Haynes*, 234 F.3d 837, 845-46 (4th Cir. 2000) (accusations with insufficient proof of falsity); *Boggs v. Collins*, 226 F.3d 728, 739-40 (6th Cir. 2000) (single, allegedly false accusation); *United States v. Bartlett*, 856 F.2d 1071, 1088-89 (8th Cir. 1988) (single, allegedly false accusation involving significantly different facts); *Hughes v. Raines*, 641 F.2d 790, 793 (9th Cir. 1981) (single significantly different accusation). To the extent these decisions

might be thought inconsistent with *White*, *Redmond*, and this order, my conclusion is that *White*, *Redmond*, and this order have the better of it.

IV

The Florida appellate court said that any error on this score was harmless. It was not. An error is harmless if the court is "able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). For a Confrontation Clause violation, the

> correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684.

Here the error was not harmless, because the complaining witness's testimony was a critical part of the state's case, and a "reasonable jury might have received a significantly different impression of [the witness's] credibility had [Mr. Baker's] counsel been permitted to pursue his proposed line of cross-examination." *Van Arsdall*, 475 U.S. at 680.

Indeed, the complaining witness's testimony was not only a critical part of

the state's case; it was the *only* evidence of an element of the offense. The offense requires "oral, anal, or vaginal penetration by, or union with, the sexual organ." Fla. Stat. § 794.011(1)(h) (1997). The witness provided the only evidence that this happened.

In labeling the error harmless, the Florida appellate court said Mr. Baker admitted his guilt. As support for the conclusion, the court correctly noted that the statute does not require penetration; "union" with a sexual organ, which could consist merely of touching, is enough. But Mr. Baker never said any sexual organ was touched. He did not say his penis touched the complaining witness. And he unequivocally denied touching her breasts or "between her legs."

A full review of the interview transcript confirms these conclusions. Before quoting the transcript, some context is in order. The interview addressed the complaining witness's allegation that Mr. Baker committed a sexual act not only on the occasion that led to the conviction but on a later occasion as well. And in the interview, the complaining witness was referred to as "D. A.," or, as it was transcribed, "DA." The full discussion was this:

> INVESTIGATOR HAIRE: Willie, there was an abuse report that came in to us from the Department of Protective Services and the abuse report said that DA, we will call her – do you know who I'm speaking about when I say DA?
>
> MR. BAKER: Yes.

INVESTIGATOR HAIRE:  That DA *had said* that you had forced her to have sexual intercourse with you two times.  Is this true?

MR. BAKER:  *Yes*.

INVESTIGATOR HAIRE:  It is true?

MR. BAKER:  We started off playing around and it led to other things.  And it led around to it.  *But, didn't nothing happen.  I couldn't do it.*

INVESTIGATOR HAIRE:  How did it all start about?  First, when was this?

MR. BAKER:  I can't – I can't remember the exact date, but it was some time in this year, '99.

INVESTIGATOR HAIRE:  Okay.  This is November of '99.  And it happened sometime this year?

MR. BAKER:  Yes.

INVESTIGATOR HAIRE:  Okay.  And where did this happen at?

MR. BAKER:  At Youmans' trailer park.

INVESTIGATOR HAIRE:  What lot number?

MR. BAKER:  Lot number 21.

INVESTIGATOR HAIRE:  Who all lives at lot 21?

MR. BAKER:  My wife and my stepchildren.

INVESTIGATOR HAIRE:  Okay.  And DA now is, she's your wife's sister?

MR. BAKER:  Right.

INVESTIGATOR HAIRE: That would be your sister-in-law?

MR. BAKER: That's right.

INVESTIGATOR HAIRE: Okay. And inside the house there you said you got to playing around. Start from the beginning and tell me what all happened.

MR. BAKER: Well, we started playing around with one another and one thing led to another. And it got down to where *I tried to have sex with her. I couldn't. I couldn't do it.*

INVESTIGATOR HAIRE: Did you touch her on her breast?

MR. BAKER: *No. Maybe around her waist and on her shoulder and stuff like that.*

INVESTIGATOR HAIRE: Okay. Did you touch her on her legs or her behind or between her legs?

MR. BAKER: *No.*

INVESTIGATOR HAIRE: Did you take her clothes off?

MR. BAKER: No. She already pulled them down.

INVESTIGATOR HAIRE: She pulled her clothes down?

MR. BAKER: Uh-huh.

INVESTIGATOR HAIRE: What kind of clothes? What was she wearing?

MR. BAKER: I can't remember exactly. I believe she had on – I believe she had on jeans. Had jeans, I think. I'm not for sure about it.

INVESTIGATOR HAIRE: And she pulled those down to try to have sex with you?

MR. BAKER:  Uh-huh.

INVESTIGATOR HAIRE:  But, because of your condition, you said you weren't able to have sex?

MR. BAKER:  *I wasn't able*.

INVESTIGATOR HAIRE:  How old is she?

MR. BAKER:  I think she's fifteen.

INVESTIGATOR HAIRE:  Okay.  Let's see.  *Her date of birth is in January.  So I guess she would have just turned fifteen.  Had you ever had sex with her*?

MR. BAKER:  *Yes*.

INVESTIGATOR HAIRE:   Now, she said – she mentioned two times.  Was there a second time?

MR. BAKER:  *No*.

INVESTIGATOR HAIRE:   You did not take her in your car and take her to C & E Farm Road –

MR. BAKER:  No.

INVESTIGATOR HAIRE:   – and try to have sex with her?

MR. BAKER:  No.

 INVESTIGATOR HAIRE:   That did not happen?

MR. BAKER:  *No, that did not happen*.

INVESTIGATOR HAIRE:   The only time that you attempted to have sex with her was this one time in your house?

MR. BAKER: *That's right.*

INVESTIGATOR HAIRE: And where was your wife at that time?

MR. BAKER: I can't remember that. I know she wasn't at home.

INVESTIGATOR HAIRE: Where were the other children?

MR. BAKER: They were out, out playing, I think. All of them wasn't there.

INVESTIGATOR HAIRE: What time of day was it?

MR. BAKER: It was afternoon. I don't know exactly what time, but it was in the afternoon.

INVESTIGATOR HAIRE: Okay. And you are telling me the truth, that this only happened one time?

MR. BAKER: *Yes, sir.*

. . . .

INVESTIGATOR HAIRE: Is there anything else that you can add to this statement?

MR. BAKER: No.

INVESTIGATOR HAIRE: When you were playing around with DA that day, did you intend for something like that to happen?

MR. BAKER: No.

INVESTIGATOR HAIRE: Did it just get out of hand or what?

MR. BAKER: It did. I would say it got out of hand, just got out of hand.

> INVESTIGATOR HAIRE:  Okay.  Is there anything else that you feel like you can add to this statement?
>
> MR. BAKER:  Not at this time.

Trial Tr. 49-54 (emphasis added).

As this quotation confirms, the first relevant question was whether D.A. *had said* that Mr. Baker forced her to have sex with him.  Mr. Baker answered "Yes."  At least literally, this was simply an admission that the allegation was made, not that it was true.  And when, in the very next question, the investigator tried to treat the statement as an admission that the complaining witness and Mr. Baker did in fact have sex, Mr. Baker disagreed, saying, "*didn't nothing happen.  I couldn't do it.*"  Mr. Baker stuck with that explanation, and he also unequivocally denied the complaining witness's assertion that he had sex with her on another occasion, as well.

It is of course true, as the Florida appellate court emphasized, that neither penetration nor an erection is necessary to the crime.  Mr. Baker committed the crime if he touched his penis to the complaining witness's vagina but was unable to achieve penetration because of the lack of an erection.  But Mr. Baker did not say that happened.  Nor did he say anything else happened that would have violated the statute.  He said he may have touched the complaining witness's waist and

shoulder and "stuff like that," but he did not say what he touched them with. Mr. Baker did not say he touched the complaining witness anywhere with his penis. And he unequivocally denied touching the complaining witness's breasts or legs or touching her between her legs. On any fair reading of the interview transcript, Mr. Baker admitted repugnant conduct, but he did not admit committing the crime of which he was convicted.

To be sure, there was a single additional answer that, standing alone, might seem to the contrary. The investigator said, "Her date of birth is in January. So I guess she would have just turned fifteen. Had you ever had sex with her?" Mr. Baker responded, "Yes." Perhaps he was answering the first part of the question: whether she was 15. Indeed, with a change in the punctuation—inserted after-the-fact by the court reporter—the entire question goes only to her age: "Her date of birth is in January, so I guess she would have just turned fifteen, had you ever had sex with her." Punctuated this way, the question was simply whether, if sex had occurred as alleged, the complaining witness would have been 15. The correct answer to that question was "yes" but was an admission of nothing other than, perhaps, Mr. Baker's knowledge of her age. And in any event, a jury would not be required to accept this one-word answer as a recantation of the otherwise clear and consistent statements that Mr. Baker never had sex with the victim because he was

unable to do so and that he never touched her breasts or between her legs. The assertion that Mr. Baker unequivocally admitted his guilt of this offense is just not correct.

The Florida court's application of the harmless-error standard thus was based on an unreasonable determination of the facts in light of the evidence. And it was an unreasonable application of the harmless-error standard set out in *Van Arsdall*. Finally, the violation of the Confrontation Clause had a "substantial and injurious effect or influence in determining the jury's verdict," thus making issuance of the writ proper under *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993).

V

Mr. Baker had a right under the Confrontation Clause to cross-examine the complaining witness on the fact that she had falsely accused other men of sexual misconduct, as she would have admitted. The denial of the right was not harmless. The denial of the right had a substantial and injurious effect in determining the jury's verdict. Accordingly,

IT IS ORDERED:

1. The clerk must enter judgment stating:

> The petition for writ of habeas corpus is GRANTED. The conviction previously entered in Case No. 99-805-CFA in the Circuit

Court, Second Judicial Circuit, Gadsden County, Florida, is vacated. The respondent must release the petitioner from all aspects of custody on that conviction within 60 days, subject, however, to the right of the State of Florida to retry the petitioner within a reasonable time in a manner consistent with this judgment.

2. The clerk must close the file.

SO ORDERED on March 31, 2010.

                                            s/Robert L. Hinkle
                                            United States District Judge